UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                       :
  UNITED STATES OF AMERICA,                            :
                                                       :
                 - v. -                                :                    20 Cr. 83 (CS)
                                                       :
  MAURISIO STEWART,                                    :
        a/k/a "Nitty,"                                 :
                                                       :
                              Defendant.               :
------------------------------------------------------x


**THE GOVERNMENT'S MOTIONS *IN LIMINE***


                                          AUDREY STRAUSS
                                          Acting United States Attorney
                                          Southern District of New York
                                          300 Quarropas Street
                                          White Plains, New York 10601


Nicholas S. Bradley
Assistant United States Attorney
*- Of Counsel -*

## PRELIMINARY STATEMENT

The Government respectfully submits the following motions *in limine* in advance of the trial of Maurisio Stewart (the "defendant") scheduled to begin on December 14, 2020. As set forth below, the Government seeks pretrial rulings from the Court to (1) permit law enforcement testimony regarding information received from a confidential source to explain the actions of law enforcement; (2) preclude the defendant from litigating at trial the legality of his arrest and the subsequent hotel room search in this case; (3) preclude the defendant from examination or argument regarding inflammatory political topics; (4) preclude the defendant from offering evidence or argument concerning personal factors unconnected to guilt or discussion of punishment; (5) preclude defendant from offering evidence or argument concerning the defendant's prior commission of "good acts" or non-commission of other bad acts; and (6) allow the Government to introduce evidence of the controlled substances recovered from on the defendant's person and inside his hotel room on or about January 17, 2020.

## BACKGROUND

As the evidence at trial will show, the defendant, a convicted felon, knowingly possessed a defaced 40 caliber handgun (the "Firearm") inside an open backpack with live ammunition that was recovered on or about January 17, 2020 during a consent search of an extended stay hotel room in Elmsford, New York, where the defendant and his wife were staying.

In or about January 2020, a confidential source (the "CS") told a Tarrytown Police Department detective, in sum and in substance, that: (i) the CS had observed an individual he/she knew as "Nitty" sell drugs to a friend of the CS in the vicinity of Tarrytown, New York; (ii) the CS had observed "Nitty" in possession of a firearm, which "Nitty" referred to as "the Forty"; (iii) the

CS had observed "Nitty" driving a dark BMW; and (iv) "Nitty" and his wife were currently living at a hotel in the vicinity of Elmsford, New York. The CS also identified "Nitty" as the defendant after reviewing a photograph of the defendant provided by the detective.

The detective forwarded the information from the CS to the Greenburgh Drug and Alcohol Task Force (the "Task Force"), which identified the dark BMW believed to be used by the defendant (the "BMW"). On January 17, 2020, Task Force Officer Dumser used a license plate reader system to locate the BMW in the parking lot of an extended stay hotel in Elmsford, New York (the "Hotel"). Task Force officers established surveillance of the Hotel's parking lot, and at approximately 8:00 p.m., they observed the defendant leave the Hotel and enter the BMW. Task Force officers followed the BMW and performed a traffic stop. During the traffic stop, Officer Dumser (i) identified the sole occupant as the defendant; (ii) observed drug paraphernalia in plain view inside the car; and (iii) was informed by the defendant that he did not have a valid license. Based on these observations, Officer Dumser asked the defendant to step out of the car and asked the defendant whether he had any drugs on his person. The defendant pointed to his jacket pocket, and Officer Dumser recovered five individually wrapped twists containing supposed crack cocaine and seven wax envelopes containing supposed heroin. Officer Dumser placed the defendant under arrest, and the defendant was subsequently charged with a controlled substance offense currently pending in state court. Later, at the Tarrytown Police Department, the defendant agreed to speak with law enforcement and, after receiving *Miranda* warnings, described, in substance, that he had "protection" in his hotel room and that "whatever is in that room is mine, I'll take that hit no problem."

That same evening, Task Force officers at the Hotel identified a woman believed to be the defendant's wife leaving the room ("Room-1") where the defendant was believed to be staying based on front desk records. The woman confirmed she was the defendant's wife, and that she had rented Room-1 in her name. After speaking with the Task Force officers, the defendant's wife signed a consent form allowing a search of Room-1. Upon searching Room-1, officers recovered a defaced 40 caliber handgun in plain view inside an open backpack. Inside the backpack, the handgun was next to six live rounds of ammunition and the defendant's personal papers and correspondence. Inside Room-1's refrigerator, officers recovered additional drug contraband, namely, approximately 74 pills believed to be oxycodone and plastic bags containing what officers believed to be quantities of supposed cocaine and crack.

On January 22, 2020, federal agents arrested the defendant on the pending federal charges. While being processed by the Federal Bureau of Investigation ("FBI"), the defendant spontaneously stated, in substance, that the only reason he had the gun was to protect himself and his family. The defendant also offered to cooperate with law enforcement and explained, in substance, that he could assist in providing information about the trafficking of firearms in the New York area.

## ARGUMENT

### I. Information Provided to Law Enforcement by the Confidential Source Is Not Hearsay and Is Admissible Background Explaining the Impetus of the Investigation

#### A. Relevant Facts

As noted above, the Government expects the evidence will show that in or about January 2020, the CS told a Tarrytown Police Department detective that an individual the CS later identified as the defendant was selling cocaine to a friend of the CS in the vicinity of Tarrytown,

New York. The CS reported that he/she had witnessed some of these drug sales personally, and in approximately November 2019 had seen the defendant with a handgun that the defendant described as "the Forty." The CS described the defendant's car as a dark BMW and said the defendant and his wife were currently living at a hotel in the vicinity of Elmsford, New York. The detective forwarded that information to Tarrytown Police Officer Dumser, a member of the Greenburgh Drug and Alcohol Task Force, and law enforcement thereafter took steps to identify the defendant and his vehicle, ultimately leading to the recovery of the Firearm and distribution quantities of narcotics.

### B.     Applicable Law

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence *to prove the truth of the matter asserted* in the statement." Fed. R. Evid. 801(c) (emphasis added). The normal bar on hearsay testimony "does not pertain to statements adduced merely to show that they were made or that they had some effect on the future actions of a listener." *United States v. Castro-Lara*, 970 F.2d 976, 981 (1st Cir. 1992). As a result, testimony not offered to prove the truth of an out-of-court statement, but rather offered "for the more limited purpose of providing relevant context or background, is not considered hearsay." *Id.* (law enforcement testimony regarding informant's tip of incoming drug shipment and description of the courier was "relevant and material to show that a conversation had taken place and that the conversation led to a full-scale surveillance"); *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994) (noting that "in some instances, information possessed by investigating agents is received at trial not for the truth of the matter, but as 'background' to explain the investigation, or to show an agent's state of mind so that the jury will understand the reasons for

the agent's subsequent actions"). Such background evidence may be admitted to "furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Reifler*, 446 F.3d 65, 92 (2d Cir. 2006); *see also United States v. Roy*, 444 F. App'x 480, 482 (2d Cir. 2011) (summary order) (law enforcement description of informant's tip that defendant might have numerous weapons in his house was not offered for its truth, but rather "offered to show that the statement was made and to provide background information explaining the impetus for and the sequence of the investigation"). Furthermore, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

### C.    Discussion

The Government seeks to introduce, through law enforcement testimony, information provided by the CS that served as the background and impetus for the investigation. Such testimony is not offered for the truth of the matter asserted by an out-of-court declarant, but rather to show notice and effect on the hearer (in this case, the investigating officers), as well as the background for how the investigation began and how the defendant came to be surveilled in the parking lot of the Hotel. Such evidence is necessary to provide the jury with "helpful background-table-setting information" as to why the officers were surveilling the defendant on or about January 17, 2020, which further places their actions into context. *Castro-Lara*, 970 F.2d at 981 (testimony about informant's tip explained why the agents were at the airstrip). Such information is also important for the jury to understand the sequence of events that led to the federal charges against the defendant. Although the Firearm was recovered from an open backpack during a consent search of Room-1, officers were alerted to the possibility that he was staying at the Hotel through the

CS's tip. That information further led to the identification of the defendant in the parking lot of the Hotel by law enforcement. The defendant was arrested in his car a short time afterward, and he later made *Mirandized* statements regarding his possession of the Firearm. Without that context, the jury would be left with an incomplete picture and understanding as to why officers found themselves in the defendant's hotel room, why they sought consent to search Room-1 in the first place, and the circumstances that led to the defendant's *Mirandized* statements.

Moreover, while testimony of the CS's tip will provide important background information for the jury, the Government expects to offer first-hand evidence demonstrating that the defendant knowingly possessed the Firearm. *Roy*, 444 F. App'x at 482 (informant's statement, even if offered for its truth, had "little significance in light of the first-hand evidence at trial"). Here, the Government would rely on law enforcement testimony concerning the recovery of the Firearm in plain view next to the defendant's personal papers and effects and the defendant's *Mirandized* and spontaneous statements regarding his admitted possession of the Firearm. Accordingly, the Government respectfully requests a pre-trial ruling from the Court allowing testimony regarding the CS's tip as admissible, non-hearsay evidence.

## II.    Defendant Should Not Be Permitted to Litigate the Legality of His Arrest and Search at Trial

On September 24, 2020, the Court held a pretrial conference and set a schedule for pretrial motions under which the defendant was due to file any suppression motion by November 2, 2020. On November 2, 2020, the defendant filed his motion seeking to suppress only certain post-arrest statements made by the defendant, as well as physical evidence recovered from the defendant's hotel room as the fruit of an illegal interrogation. ECF No. 18. The defendant did not challenge the

legality of the stop of his vehicle, the legality of his arrest, the consent for law enforcement to search Room-1, or the recovery of physical evidence from that search (including the Firearm). Indeed, the defendant did not raise any Fourth Amendment suppression issues in his suppression motion.

Accordingly, the defendant has waived his ability to move to suppress evidence on any grounds other than what was raised in his November 2, 2020 motion. He should not be permitted to litigate at trial the lawfulness of his arrest, the consent search of Room-1, the recovery of the Firearm, or other evidence recovered.  Allowing the defendant to do so would confuse the issues relevant to the jury's findings of fact and would usurp the Court's role in ruling on the admissibility of evidence. Accordingly, the defendant's counsel should be precluded from suggesting to the jury—either through argument or questions posed to witnesses—that the defendant's arrest and the search of Room-1 were not proper.  *See United States v. Kopp*, 562 F.3d 141, 143 (2d Cir. 2009) ("A party waives its ability to move to suppress evidence if it fails to do so by the pre-trial deadline set by the court, except that the district court may grant relief from that waiver '[f]or good cause.'"); *see also, e.g.*, *United States v. Sebastian*, 497 F.2d 1267, 1270 (2d Cir. 1974) (noting, in context of holding that Jencks Act does not apply to suppression hearings, that "findings at such a hearing as to admissibility of challenged evidence will often determine the result at trial and, at least in the case of Fourth Amendment suppression motions, cannot be relitigated later before the trier of fact").

## III.    Defense Questioning or Argument Regarding Inflammatory Political Topics Should Be Precluded

The Federal Rules of Evidence permit the introduction of evidence only if relevant to questions properly before the jury. Evidence and argument that might encourage jury nullification

7

do not qualify. *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) ("categorically reject[ing] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (2d Cir. 1993) ("Neither court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."). In *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997), the Second Circuit held that "trial courts have a duty to forestall or prevent [jury nullification], whether by firm instruction or admonition, or where it does not interfere with guaranteed rights or the need to protect the secrecy of jury deliberations, . . . by dismissal of the offending juror from the venire or jury." 116 F.3d at 616. The Court characterized jury nullification as a "sabotage of justice," *id.* (quoting Randall Kennedy, *The Angry Juror*, Wall St. J. Sept. 30, 1994 at A12). Accordingly, defense counsel should be precluded from making arguments or asking questions designed to promote jury nullification in this case. For example, defense counsel should be precluded from attempting to introduce testimony or evidence, or making any arguments, regarding recent political events, policies and practices, allegations of racial discrimination in policing, and unrelated alleged police misconduct or brutality in the recent news.

## IV. Evidence or Argument Concerning the Defendant's Family Background, Health Condition, Age, or Any Other Personal Factors Unconnected to Guilt Should Be Precluded, As Should Discussion of Punishment

The Government is unaware of any lawful basis for the defendant to offer evidence or argument concerning his family background, health, age, or any other similar factors. He should be precluded from doing so, and from mentioning such subjects in the opening statement, absent a showing that such factors bear on guilt. *See, e.g., United States v. Paccione*, 949 F.2d 1183, 1201

(2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The defendant should similarly be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion." *Id.*

## V.   Evidence or Argument Concerning the Defendant's Prior Commission of "Good Acts" or Non-Commission of Other Bad Acts Should Be Precluded

To the extent that the defendant may seek to present evidence or argument concerning his commission of "good acts," including any philanthropic giving or other similar deeds, or to offer evidence of non-criminal activities to seek to disprove his guilt, he should be precluded from doing so.  Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions."  *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). Similarly, while a defendant may offer general testimony from a

9

character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-1250 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Fazio*, No. S2 11 CR 873, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012), ("[A] defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving). The defendant should accordingly be precluded from offering evidence or argument, including in his opening statement, concerning any charity, philanthropy, or any other specific instance or instances of prior good acts, or the lack of commission of other bad acts.

## VI. Evidence of the Defendant's Possession of Controlled Substances in His Vehicle and in His Hotel Room on or About January 17, 2020 Is Admissible

Pursuant to Rule 404(b), the Government seeks to admit evidence of the defendant's possession of controlled substances in the BMW and Room-1 on or about January 17, 2020. Such evidence is inextricably intertwined with the evidence regarding the charged offense, and is necessary to complete the story of the crime on trial. Such evidence is also independently admissible as proof of the defendant's opportunity, intent, knowledge, identity, absence of mistake, or lack of accident in possessing the Firearm on or about January 17, 2020.

10

### A.    Relevant Facts

As explained above, the Government expects the evidence will show that on or about January 17, 2020, Task Force officers performed a traffic stop of the BMW after the defendant was observed getting into the BMW and leaving the parking lot of the Hotel. That traffic stop was predicated on a tinted window violation, which the defendant is not challenging in his pending suppression motion. Officer Dumser saw drug paraphernalia in plain view inside the BMW, and asked the defendant to step out of the car. When he asked the defendant whether he had drugs on his person, the defendant pointed to the pocket of his jacket, at which point Officer Dumser recovered five individually wrapped twists containing supposed crack cocaine and seven wax envelopes containing supposed heroin. Officer Dumser arrested the defendant, who was later charged in state court with Criminal Possession of a Controlled Substance, Third Degree, in violation of New York Penal Law § 220.16(01). During *Mirandized* statements made to law enforcement at the Tarrytown Police Department, the defendant stated, in substance, that he had "protection," that he had been shot before and wanted to protect his wife, and that whatever was in the hotel room (*i.e.* Room-1) was his. During the consent search of Room-1 that same evening, officers recovered the Firearm in the open backpack, as well as approximately 74 pills of what is believed to be oxycodone[1] and plastic bags containing quantities of supposed cocaine and crack from inside the refrigerator in Room-1.

---

[1]      The testing laboratory has informed the Government that it expects to complete its analysis by November 30, 2020.

### B.      Applicable Law

In the Second Circuit, evidence of "uncharged criminal activity is not considered other crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)). The Court may also admit evidence that "does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment." *Gonzalez*, 110 F.3d at 941 (affirming district court's admission of uncharged burglary evidence in 18 U.S.C. § 922(g) trial because it "was relevant both to a possible motive for the defendants' possession of firearms and to provide crucial background evidence that gave coherence to the basic sequence of events that occurred").

Even under Rule 404(b), evidence of "a crime" is admissible if it (1) is advanced for a proper purpose; (2) is relevant to a material issue at trial; (3) has probative value that is not substantially outweighed by any unfair prejudicial effect; and (4) is admitted subject to a limiting instruction, if one is requested. *See, e.g.*, *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006); *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). Permissible purposes for introducing evidence of other acts include "proving motive, opportunity, intent, . . . knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit follows "an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *LaFlam*, 369 F.3d at 156. The Court has broad latitude in determining whether to admit evidence pursuant to Rule

12

404(b), and its ruling will be reviewed only for abuse of discretion. *See, e.g.*, *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009).

The admission of extrinsic evidence concerning a defendant's prior conduct is particularly appropriate where the defendant's state of mind is at issue:

> Federal Rule of Evidence 404(b) . . . generally prohibits the introduction of extrinsic acts that might adversely reflect on the actor's character, unless the evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge. Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.

*Huddleston v. United States*, 485 U.S. 681, 685 (1988). The defendant's knowledge and intent is in issue unless the defendant has unequivocally conceded that element of the offense. *See, e.g.*, *United States v. McCallum*, 584 F.3d 471, 475-76 (2d Cir. 2009) ("Because [the defendant's] counsel did not make a statement to the court of sufficient clarity to indicate that intent and knowledge would not be disputed, those issues remained sufficiently in dispute for the similar acts evidence to be relevant and hence admissible."). The defendant's knowledge and intent are also directly put in issue when there is an argument that the defendant was "merely present" at the place where the alleged offense occurred, and was not knowingly involved in any illegal activity. *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.").

Where relevant evidence is offered for a proper purpose under Rule 404(b), the Court may exclude the evidence under Rule 403 only if the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice. *Zackson*, 12 F.3d at 1182. With regard to the prejudice prong, evidence is unfairly prejudicial "only when it tends to have some adverse effect

13

upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). Moreover, Rule 403 does not bar evidence of other bad acts that "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).  All relevant evidence is to some degree prejudicial; *unfair* prejudice means, however, an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Rule 403, Advisory Comm. Note. Traditional examples of unfair prejudice include evidence that appeals to the jury's sympathies, arouses jurors' sense of horror, and provokes a jury's instinct to punish. *See United States v. Herron*, No 10 Cr. 615 (NGG), 2014 U.S. Dist. LEXIS 63872, at *13-14 (E.D.N.Y. May 8, 2014). Finally, when opposing the admission of evidence under Rule 404(b), a "[d]efendant must show some undue prejudice, apart from the prejudice implicit in Rule 404(b) evidence." *United States v. Vargas*, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988).

###    C.    Discussion

The Court should permit the Government to introduce evidence of the defendant's possession of controlled substances on or about January 17, 2020 in its case-in-chief.  Because there is likely to be no serious dispute that the Firearm was recovered in the open backpack during the consent search of Room-1, the Government expects that the defendant will try to argue that he did not know the Firearm was in his backpack because someone else had placed the Firearm in his backpack or Room-1 or that he had no awareness of the Firearm. Alternatively, the defendant may simply argue that the Government has not satisfied its burden of proving beyond a reasonable doubt that that the defendant had the requisite intent and knowledge to commit the crime. Under

any of these circumstances, the defendant puts the issues of opportunity, intent, knowledge, identity, absence of mistake, or lack of accident at issue in the trial.

As an initial matter, the drugs recovered from the defendant's person and inside Room-1 are admissible as direct evidence because they are inextricably intertwined with the evidence regarding the charged offense and are necessary to complete the story. Similar to the burglary evidence introduced in *Gonzalez*, evidence of the defendant's drug possession following the car stop is "crucial background evidence that [gives] coherence to the basic sequence of events." 110 F.3d at 941-42. Specifically, Officer Dumser's arrest of the defendant led to a subsequent *Mirandized* interview, which the Government expects will be explained to the jury through law enforcement testimony. That testimony will include, in substance, the defendant describing how he had "protection" in his hotel room and that he would "take that hit" for anything in the hotel room. Absent that evidence, the jury would be bereft of context for the defendant's *Mirandized* statements, or why he was even in police custody on or about January 17, 2020.

In addition, such evidence is also admissible in the Government's case-in-chief under Rule 404(b) because it is relevant to the defendant's knowledge and motive. For example, that drugs were recovered both on the defendant's person and later inside Room-1 corroborates his knowledge of Room-1's contents and his knowing possession of the contraband inside, particularly given his inculpatory *Mirandized* statements. Furthermore, that the defendant possessed drugs in both instances corroborates why he would need "protection." *See United States v. Reyes*, 353 F.3d 148, 154 (2d Cir. 2003) ("Indeed, we have often recognized that firearms and sharp objects, such as razor blades and hypodermic needles, are "tools of the [drug] trade" regularly found on narcotics traffickers."). Such evidence would also tend to show that his possession of the Firearm was not

accidental or a mistake. Accordingly, evidence of the defendant's drug possession on or about January 17, 2020 is both relevant and admissible as inextricably intertwined with the evidence of the charged offense and necessary to complete the story. And, in any event, such evidence would be offered for a legitimate and highly probative purpose under Rule 404(b).

Finally, the admission of the limited evidence described above would not be unfairly prejudicial pursuant to Rule 403. Evidence of the drugs recovered on or about January 17, 2020 does not involve conduct "more sensational or disturbing" than the charged offense and any *unfair* prejudice is therefore minimal. *See Roldan-Zapata*, 916 F.2d at 804; *United States v. Taylor*, 767 F. Supp. 2d 428, 438 (S.D.N.Y. 2010); *see also United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (admitting evidence of prior narcotics transactions in narcotics case where such evidence was no more "sensational or disturbing" than the crimes charged) (quoting *Roldan-Zapata*, 916 F.2d at 804). Moreover, any danger of unfair prejudice or confusion of the issues is therefore minimized, and does not outweigh—let alone substantially so—the evidence's probative value. *See* Fed. R. Evid. 403. Finally, any prejudicial effect could be further reduced with a limiting instruction, *Huddleston*, 485 U.S. at 691-92, which would sufficiently mitigate the possibility that the jury might draw improper inferences from this evidence.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motions to (1) permit law enforcement testimony regarding information provided by the CS to explain the actions of law enforcement; (2) preclude the defendant from litigating at trial the legality of his arrest and the subsequent search of Room-1; (3) preclude the defendant from examination or argument regarding inflammatory political topics; (4) preclude the defendant

from offering evidence or argument concerning personal factors unconnected to guilt or discussion

of punishment; (5) preclude the defendant from offering evidence or argument concerning the

defendant's prior commission of "good acts" or non-commission of other bad acts; and (6) allow

evidence of controlled substances recovered from on the defendant's person and inside his hotel

room on or about January 17, 2020.[2]


Dated:          White Plains, New York
                November 12, 2020


                                        Respectfully submitted,

                                        AUDREY STRAUSS
                                        Acting United States Attorney
                                        Southern District of New York


                                  by:   _____
                                        Nicholas S. Bradley
                                        Assistant United States Attorney
                                        (914) 993-1962


---

[2]      The Government is continuing to investigate the background of its prospective witnesses, and expects shortly to discuss fully with the defense whether the defendant believes any collateral matters in the witnesses' backgrounds would be appropriate subjects for cross-examination. If there are any matters on which the parties are unable to reach agreement, the Government will submit supplemental letter briefing with respect only to the unresolved issues.